**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ruben Rene Rojas,<br><br>    Plaintiff,<br><br>v.<br><br>Graham County Adult Detention Facility, et al.,<br><br>    Defendants. | No. CV-19-00023-TUC-JGZ<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion for Default Judgment as to Defendant Larson. (Doc. 103.) An Evidentiary Hearing on the issue of damages was held on June 15, 2021, and Plaintiff submitted medical records and provided testimony evidencing his injuries. (Docs. 113-1, 114.) After consideration of the evidence and Plaintiff's contentions, the Court will grant the motion, in part, and award Plaintiff $3,500 in compensatory damages.

**I.    Background**

In November 2019, the Court screened Plaintiff's Second Amended Complaint, finding that Plaintiff sufficiently alleged a claim against Defendant Dr. Larson. (Doc. 25.) Relevant to the pending motion, in Count One, Plaintiff alleged a violation of his Fifth and Fourteenth Amendment rights regarding his medical care by Dr. Larson.

    **A.    Medical Claim Against Defendant Larson**

Plaintiff claims that while housed in the Graham County Adult Detention Facility from February 18 to June 15, 2018, his skin became very dry because of the conditions in

the jail and the "indigent soap."[1] On March 9, 2019, Defendant Larson diagnosed Plaintiff with chronic dermatitis. Plaintiff claims that on March 17, 2018, he was "put on medical lotion" and Defendant Larson told him that he needed to see a dermatologist after he was released. Plaintiff contends he requested more lotion on March 30, 2018, because the lotion he had received was insufficient to "cover the affected area" and the cold cell where he was confined was drying out his skin. Plaintiff asserts Defendant Larson denied his request for more lotion, but told him to shower every other day and to use soap only "in the places [Plaintiff] needed to." Plaintiff alleges he requested more lotion on April 13, 2018, after showing Defendant Larson that his skin condition was getting worse and the areas of dry skin were getting larger. According to Plaintiff, Defendant Brandt[2] said Plaintiff was receiving enough lotion. Plaintiff contends he told Defendant Larson the lotion was not enough because his skin "soaks it up." Defendant Larson allegedly looked at Defendant Brandt, who stated that one bottle was enough. Plaintiff claimed one bottle was not enough and he needed more lotion. Defendant Brandt again said no, Plaintiff looked at Defendant Larson, and Defendant Larson said that one bottle was enough. At this point, Plaintiff allegedly asked "who is the Dr. here?" When he got back to his cell, Plaintiff wrote a grievance stating that the medical department was not addressing his serious medical need, was not providing adequate medical attention, and was acting with deliberate indifference to his serious medical condition. Plaintiff claims the grievance was never answered.

Plaintiff asserts that when he saw Defendant Larson on May 14, 2018, Defendant Larson again told Plaintiff he would receive only one bottle of lotion. Plaintiff contends that at a May 18, 2018 appointment, Defendant Schermer[3] allegedly told Plaintiff to "be patient, we are renewing the contract with the dermatologist." Plaintiff claims his skin condition had spread and his skin was cracking and burning from the jail conditions, the soap, and the disregard for his medical need.

---

[1] In order to resolve the pending motion, the Court restates the allegations as summarized by the Court's screening order. (Doc. 25 at 3-5.)
[2] The claims against Defendant Brandt have been resolved by settlement. (Doc. 102.)
[3] The Court dismissed Defendant Schermer from this case. (Doc. 25.)

On June 15, 2018, after he complained about the lack of care, Plaintiff was transported to the Gila County Jail, where he attempted to obtain the lotion Defendant Larson had prescribed. A registered nurse at the Gila County Jail refused to provide Plaintiff with the lotion, stating that the medical staff at the Graham County Adult Detention Facility had said that the lotion "was not medical" and Plaintiff's medical needs "were not a necessity at this time." Plaintiff contends that because of the deliberate indifference to his serious medical condition by the medical staff at the Graham County Adult Detention Facility, the nurse at the Gila County Jail "would do nothing for [him]."

### B. Entry of Default and Evidentiary Hearing

Upon issuing the screening order, the Court ordered Defendant Larson to answer Count One and for Graham County Adult Detention Facility to submit Defendant Larson's last known address under seal to facilitate service of process. The United States Marshals Service executed personal service on Larson on June 17, 2020. (Doc. 39.) When Larson failed to respond to the complaint within twenty-one days, the Clerk of Court entered default as to Larson on July 15, 2020, upon application of Plaintiff. (Docs. 45, 46.)

On December 21, 2020, the Court, in its discretion, ordered the Clerk of Court to mail certain docket records to Larson alerting him of the entry of default and Plaintiff's motion for default judgment. (Doc. 97.) Larson failed to respond or appear.

As a result of Defendant Larson's continuing failure to respond, the Court set the pending motion for an evidentiary hearing to determine the appropriate amount of damages. (Doc. 105.) The evidentiary hearing was held on June 15, 2021. (Doc. 114.) Plaintiff's criminal trial attorney, who observed Plaintiff's skin condition at the relevant time, testified at the hearing. Plaintiff also testified and provided his medical records from the jail. (Doc. 113.)

## II. Discussion

### A. Default Judgment

Once a party's default has been entered, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2). "Factors which may be considered by courts

in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When deciding to enter default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557-60 (9th Cir. 1977).

After consideration of these factors, the Court will grant Plaintiff's motion for default judgment against Defendant Larson. All of the factors, except the strong policy favoring decisions on the merits, weigh in favor of default judgment or are neutral. First, if Plaintiff's motion for default judgment is not granted, he "will likely be without other recourse for recovery," and will thereby suffer prejudice. *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Second and third, the Court has found that the complaint's allegations state a claim against Defendant Larson, which favors entry of default judgment. *See Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (analyzing factors two and three together in light of the standard requiring courts to take the complaint's allegations as true). In fact, as it pertains to factor two—the merits of Plaintiff's claim—the prison medical documents submitted at the evidentiary hearing generally align with the factual allegations set forth by Plaintiff. With respect to factor four, while Plaintiff seeks a total of $50,000 in compensatory and punitive damages, the Court will award Plaintiff $3,500 and finds that this amount reasonably corresponds to pain and suffering attributable to Defendant Larson's failure to treat Plaintiff's skin condition and the resulting exacerbation of that condition. *See Cal. Security Cans*, 238 F. Supp. 2d at 1176 (courts must consider amount at stake in relation to the seriousness of defendant's conduct). Fifth, given the sufficiency of the complaint and Defendant's failure to respond, "no genuine dispute of material facts

would preclude granting [Plaintiff's] motion." *Id.* at 1777. Sixth, there is no evidence that Defendant Larson's default was due to excusable neglect. Seventh, the Court recognizes the strong policy favoring decisions on the merits, but this factor alone is not dispositive and Defendant's failure to respond has "rendered adjudication on the merits before this Court impracticable." *Black & Decker, Inc. v. All Spares, Inc.*, CV-09-2126-PHX-MHM, 2010 WL 3034887, *3 (D. Ariz. Aug. 3, 2010).

### B. Damages

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes*, 559 F.2d at 560. Plaintiff is required to prove up damages. *Doe v. United States*, CV-17-01991-PHX-GMS, 2018 WL 2431774, *8 (D. Ariz. May 30, 2018). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Plaintiff seeks $25,000 in compensatory damages and $25,000 in punitive damages. (Doc. 103 at 3.) In his pleadings, Plaintiff alleges pain and suffering and bodily injuries as a result of Defendant Larson's deliberate indifference. (*Id.*; Doc. 24 at 18-19.) Having reviewed the medical records and considered the testimony from the evidentiary hearing, the Court finds that Plaintiff has proved compensatory damages in the amount of $3,500.

Plaintiff sought treatment for his skin condition from Defendant Larson between mid-March 2018 and mid-June 2018. The Court concludes that Defendant Larson was deliberately indifferent in not responding to Plaintiff's obvious medical condition during this time period. The evidence showed that, on March 9, 2018, Plaintiff had "scaly," "[d]ry cracking," and "scabbed" skin over his torso, chest, neck, back, legs, and arms. (Doc. 113-1 at 7, 15, 21.) Plaintiff was diagnosed with chronic dermatitis and treated with lotion. (*Id.* at 21.) The lotion provided some relief to Plaintiff, but the amount of lotion was insufficient to cover the affected area. Plaintiff requested additional lotion four times (March 30, April 13, May 18 and June 15), but was denied.

Plaintiff's condition improved when he was given sufficient lotion, and his pain and

suffering was reduced. At the end of March 2018, Plaintiff's skin was "still dry but healing, no redness . . . only brown patches." (*Id.*) The medical records suggest that the lotion was "making it better," and that the "itching had significantly declined" by April 13, 2018. (*Id.*) But Plaintiff's condition persisted and he testified that the lotion provided was not sufficient to treat the affected area during his period of confinement at the Graham County jail. Plaintiff repeatedly asked for further treatment, in the form of lotion, which would have been easy to provide, but it was denied for no apparent medical reason. By May 14, 2018, Plaintiff's dry scaly skin had reappeared, and it spread "all over his body" by June 1, 2018. (*Id.* at 22-23.) Plaintiff testified that, during his confinement at the jail, he was in serious discomfort and experienced a feeling of burning all over his skin. Additional lotion would have ameliorated that pain and suffering.

The seriousness and extent of Plaintiff's skin condition and the discomfort Plaintiff experienced as a result of the denial of lotion or other ameliorative care is not insignificant. Although Plaintiff's condition preexisted Defendant Larson's treatment and Larson's treatment was short in duration, Plaintiff's untreated pain and discomfort persisted for approximately three and a half months. Under these circumstances, the Court concludes that $3,500 is sufficient to fairly compensate Plaintiff for his pain and suffering during this time period.

Punitive damages are available "in an action under § 1983 when the defendant's conduct . . . involves reckless or callous indifference to the federally protected rights of others," even when reckless indifference is the same standard for compensatory damages. *Smith v. Wade*, 461 U.S. 30, 56 (1983). However, punitive damages "are never awarded as of right, no matter how egregious the defendant's conduct." *Id.* While compensatory damages are mandatory once liability is found, punitive damages are completely discretionary. *Id.* Taking Plaintiff's allegations as true and considering the evidence presented on the issue of damages, the Court finds that the evidence is insufficient to support an award of punitive damages, and will, therefore, deny Plaintiff's request for punitive damages.

## C. Award of Costs

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54. Federal Rule of Civil Procedure 54(d)(1) "creates a presumption in favor of awarding costs to a prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003). The Court, in its discretion, will grant Plaintiff's request for $250 in costs for the filing fee, copies and postage in this matter.

## III. Conclusion

For the foregoing reasons,

**IT IS ORDERED**:

1. Plaintiff's Motion for Default Judgment Against Defendant Larson (Doc. 103) is **GRANTED** in part.
2. Defendant Larson is to be liable to Plaintiff for $3,500 in compensatory damages and $250 in costs.
3. The Clerk of Court is instructed to enter judgment accordingly and close its file in this action.

Dated this 12th day of July, 2021.

_____
Honorable Jennifer G. Zipps
United States District Judge